[Filed November 17, 1891.]

# WILLIAM BARMORE *v.* STATE BOARD MEDICAL EXAMINERS.

STATUTES—CONSTRUCTION IN COURTS OF SISTER STATE.—Where the statute of another state is adopted and enacted by the legislature of this state, the construction placed upon such statute by the courts of that state is also adopted, and the decisions of those courts construing the statute will be followed by this court.

BOARD OF MEDICAL EXAMINERS—QUESTION OF FACT—MANDAMUS.—Under the act of February 28, 1889, and the act of February 21, 1891, amendatory

thereof, regulating the practice of medicine and surgery, the State Board of Medical Examiners has authority to determine as a question of fact whether or not a medical institution issuing a diploma is an institution in good standing within the meaning of the law; and where there is no abuse of discretion, the decision of the board on such a question will not be disturbed by mandamus.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.   Reversed.

This is a proceeding by writ of mandamus against the defendants, who constitute the Board of Medical Examiners for the state of Oregon, to compel them to issue to the plaintiff the proper certificate authorizing him to practice as a physician in this state or show cause for such refusal.

The material allegations in the writ are, that the petitioner is a graduate of medicine, and is the holder and in lawful possession of a diploma issued by the medical department of the university of Cincinnati, a legally chartered institution in the state of Ohio, in good standing; that said petitioner did on the second day of May, 1891, present his said diploma to said board, duly verified by oath, and in all respects performed the acts on his part by statute required, and thereupon applied for a certificate from said board to the effect that said diploma was found to be genuine, and that the person presenting the same was the person named therein; that it therefore became and was the duty of said board to issue to the petitioner such certificate entitling him to practice his profession in this state; that they refused and still refuse, contrary to the duty imposed upon them by law, and that the plaintiff has no plain, speedy or adequate remedy in the ordinary course of law.

The board answered said writ; and thereafter by leave of court filed an amended answer, and admitted that plaintiff received a diploma from the medical department of the university of Cincinnati, in the state of Ohio, but denied that said medical department of the university of Cincinnati was at the date of said diploma or is now a medical institution in good standing in the state of Oregon

or elsewhere; admits that said Board of Medical Examiners neither made nor found any objection to the genuineness of said diploma or to the identity of the petitioner, but denies that they refused on those or any grounds except as hereinafter alleged to issue him a license to practice medicine in this state, and denies that said board in so refusing to issue said or any certificate or license to the petitioner acted contrary to its alleged duty under the provisions of said acts, or that it still refuses to do so except as hereinafter alleged. There are other denials not necessary to be noticed.

And for a further and separate defense the answer alleged that pursuant to the power and authority vested in said board by the act of the legislative assembly of the state of Oregon, approved February 28, 1889, entitled, "An act to regulate the practice of medicine and surgery in the state of Oregon," and the act amendatory thereof, approved February 21, 1891, creating said board, they did as such board at a meeting thereof held in the city of Portland, Oregon, on the twenty-seventh day of April, 1891, among other things, duly adopt a standing resolution for the guidance of said board, and as a criterion to aid them in determining as to whether the diplomas presented for their examination by those wishing to avail themselves of the provisions of said act, were from legally chartered medical institutions in good standing, which resolution among other things provides:  "*Resolved,* That the words 'medical institution in good standing' in section 11 of an act to amend an act entitled 'An act to regulate the practice of medicine and surgery in the state of Oregon,' is hereby defined to include only those institutions which require at least three regular courses or sessions of six months each extending over a period of three years for graduation," for the sole and only purpose of aiding said board in determining the character of the schools from which diplomas issued; that said rule was in force and effect on the second day of May, 1891, and that on said date the petitioner presented the diploma mentioned in the petition to the said board of medical

examiners for their examination, and applied for a certificate or license to practice medicine in the state of Oregon, and thereafter, to-wit, on the fourth day of May, 1891, the said board, after due deliberation, rendered its decision on said application of petitioner for a license to practice medicine in this state, and refused the said license on the grounds that the said diploma was issued to the applicant from a medical university requiring only a two-term course of less than six months each; and adjudged and determined that the said university issuing said diploma was not at said time and is not now a medical institution in good standing within the meaning of said acts and the resolutions of said board.

For a further defense, it is alleged that the plaintiff submitted himself for examination by said board, and he was fully examined as to his qualifications to practice medicine and surgery in this state; and that upon such examination his average was only fifteen per cent, and that he was not licensed because he lacked the necessary qualifications and learning; that by a rule of the board every person examined must show an attainment of seventy-five per cent in the branches of study over which the examination extends and is usually pursued in the attainment of medical knowledge.

The reply denied most of the new matter in the answer.

*George E. Chamberlain*, attorney-general, for Appellant.

*W. W. Thayer, C. B. Bellinger*, and *L. A. McNary*, for Respondent.

STRAHAN, C. J.—This litigation grows out of the act of 1889 to regulate the practice of medicine and surgery in this state and the act of 1891 amendatory thereof.

The first section of the act of 1889, (Session Acts, 1889, 144,) among other things provides: "Every person practicing medicine or surgery in any of their departments shall possess the qualification required by this act. If a graduate of medicine, he shall present his diploma to the board of

examiners hereinafter provided for, for verification as to its genuineness. If the diploma be found to be genuine, and if the person named therein be the person claiming and presenting the same, the board of examiners shall issue its certificate to that effect, signed by at least two of the members thereof, and such diploma and certificate shall be deemed conclusive as to the right of the holder of the same to practice medicine in this state." If the applicant be not a graduate, the section then provides for his examination; and if such examination be satisfactory to the examiners, a certificate shall issue which confers like privileges as in case of graduates. The second section of the act provides for the board of examiners, defines their qualifications, and the method of their appointment. Section 3 of the act requires the board of examiners to issue certificates to all who shall furnish satisfactory proof of having received diplomas or licenses from legally chartered medical institutions in good standing of whatever school or system of medicine; and they shall prepare two forms of certificates, one for persons in possession of diplomas or licenses, and the other for candidates examined by the board. They shall furnish to the county clerks of the several counties a list of all persons receiving certificates, etc. Section 13 of the act exempts those then practicing medicine in Oregon, providing they register their names with the county clerk within sixty days after the passage of the act.

By the amendatory act, (Session Acts, 1891, 153, 154,) section 3 of the original act is amended. As amended it is made the duty of the State Board of Examiners to issue certificates to all who shall furnish satisfactory proof of having received diplomas or licenses from legally chartered medical institutions in good standing of whatever school or system of medicine. They shall prepare three forms of certificates—one for persons in possession of diplomas or licenses, one for candidates examined by the board, and one for those who are practicing medicine or surgery in the state of Oregon and have registered their names and places

XXI OR.—20.

of residence with the county clerk of the county in which they reside, in conformity with section 13 of the aforesaid act, etc.   These provisions of statutory law appear to have been copied substantially either from the laws of Illinois or Missouri; nor is it material, because in each of those states the statute had been construed by the courts before its enactment in this state.   By adopting the statute in such case we adopted with it the construction it had received by the courts of the state whence it was taken, and the decisions of the courts of such state are authority here.   (*Gerrish* v. *Gerrish*, 8 Or. 351; 34 Am. Rep. 585; *McIntyre* v. *Kamm*, 12 Or. 253; *Trabant* v. *Rummell*, 14 Or. 17; *Crawford* v. *Roberts*, 8 Or. 324.)

The construction of the Illinois statute came before the supreme court of that state in *People ex rel.* v. *State Board of Dental Examiners*, 110 Ill. 180.   In the Illinois act the word reputable was used instead of the words good standing as in our and the Missouri acts; and in reaching the conclusion as to the powers of the board to determine what college was reputable within the meaning of the act, the court said: "As a part of the current history of the times, and as an aid in arriving at the legislative intention, we know there were colleges of different kinds authorized by the laws of states in which they were located in which there were pretended to be annually delivered full courses of lectures and instruction upon arts and sciences professed to be taught that were not reputable because they graduated for money frequently without any reference to scholarship.   A diploma from such an institution afforded no evidence of scholarship or attainments in its holder.   It was a fraud and deserved no respect from anybody, and it was against such diplomas the law was intended to protect the public, and therefore required the colleges to be reputable.   Whether a college be reputable or not, is not a legal question but a question of fact. So, also, are the requirements in regard to the annual delivery of full courses of lectures and instruction.   These questions of fact are by the act submitted to the decision of the board — not in so many words, but by the plainest and

most necessary implication. Their action is to be predicated upon the existence of the requisite facts, and no other tribunal is authorized to investigate them, and of necessity, therefore, they must do so. The act of ascertaining and determining what are the facts is in its nature judicial. It involves investigation, judgment and discretion."

The same question was again before the supreme court in *Board of Dental Examiners* v. *People*, 123 Ill. 227. In that case the board adopted a rule for its guidance in such cases, identical in principle with the one adopted by the appellant board. The resolution adopted by the Illinois board is as follows: "*Resolved*, That after June, 1885, the Illinois State Board of Dental Examiners will recognize as reputable only such dental colleges as require as a requisite of graduation attendance upon two full regular courses of lectures and practical instruction, which courses shall each be of not less than five months' duration, and shall be held in separate years, with practical instruction intervening between the courses. Such colleges must also require a preliminary examination before admitting students to matriculation, provided that no certificates from a high or normal school or other literary institution is presented by the candidate." In this case, *People ex rel.* v. *State Board of Dental Examiners, supra,* was approved, but it was held under the peculiar facts developed by the pleadings that the board had abused the discretion which the statute had vested in it, and for that reason the alternative writ was made peremptory. The opinion of the appellate court in this case is found in 20 Ill. App. 457.

So in *State ex rel.* v. *Gregory*, 83 Mo. 123; 53 Am. Rep. 565, the same construction was given a very similar statute in the state of Missouri. In that case it was held that the granting of certificates to holders of diplomas involved matters of judgment and discretion on the part of the state board of health, and would not be enforced by mandamus.

A similar question came before the supreme court of Minnesota in *State ex rel.* v. *State Medical Examining Board*, 32 Minn.

324; 50 Am. Rep. 575, with the like result. In that case the board was authorized to refuse the certificate to any one guilty of unprofessional or dishonorable conduct; and it was held that the relator was not entitled to a remedy by mandamus to secure a review of the correctness or the reversal of the determination of the board.

This class of legislation has its origin in the police power of the state. Its object is to protect the inhabitants of the state from imposition by presumptious pretenders, and it has been upheld and sustained in Massachusetts, Maine, New York, Ohio, Illinois, Alabama, Georgia, Missouri, and Texas. To render such a law effective, the power to grant certificates must be lodged in some recognized body of men learned in the science of medicine, with a supervisory power vested in the courts to review their acts, if the discretion which the law gives them shall be abused. But before the courts will interfere, it must be made to appear that there has been an abuse of discretion. It is not enough that there may be found men in the same profession who would have decided the other way.

We are the better satisfied with the result in this case, for the reason that the return of the board to the writ shows that after the certificate was refused on the ground that the college issuing the diploma was not one in good standing, the appellant submitted himself to an examination by the board and fell below the general average required, and for that reason also a certificate was refused. There was no abuse of discretion on the part of the board alleged or shown; and feeling ourselves bound by the authorities cited, we have only to reverse the judgment and dismiss the writ, and it is so ordered.