## The Kansas Breeze Co. v. William C. Edwards, *as Secretary of State.*

Public Printing—*Compensation.* The rates of compensation for publications made in the "official state paper" are those fixed for seventh-class work in § 8 of chapter 132, Laws of 1876 (¶ 6085, Gen. Stat. of 1889), and not those prescribed by § 17, chapter 39, General Statutes of 1868. (¶ 3040, Gen. Stat. of 1889.)

### Original Proceeding in Mandamus.

Action by *The Kansas Breeze Company* against *William C. Edwards*, as secretary of state. The purpose of the action and the material facts are stated in the opinion herein, filed July 6, 1895.

*J. B. Johnson*, and *Albert H. Horton*, for plaintiff.

*F. B. Dawes*, attorney general, for defendant.

The opinion of the court was delivered by

Martin, C. J. : It was a requirement of § 4 of article 15 of the original constitution that all public printing should be let on contract to the lowest responsible bidder ; but in 1868 this section was amended so as to require the work to be done at the capital by a state printer elected by the legislature in joint session, the price for the same to be regulated by law. In pursuance of this amendment, the legislature passed an act, being chapter 78, Laws of 1869, providing for the election of a public printer, and prescribing the duties of his office. He was therein directed, among other things, to "publish in a weekly newspaper to be printed at Topeka all laws ordered to be printed in a newspaper, all proclamations, orders, notices and advertisements" of a defined character. Section 8 of the act divided the state printing into nine classes,

and specified the rate of compensation to be paid to the public printer for each. The eighth class was defined as "all printing ordered and required to be done in a newspaper," and compensation was prescribed at the rate of $1 per square of 250 ems for the first insertion, and 50 cents per square for each subsequent insertion, but not more than $1 per 1,000 ems for publishing all decisions of the supreme court and the laws. This stood until the enactment of chapter 142, Laws of 1875. By § 5 of said chapter, the state printer was required, between the 1st and 10th of July in every year, to designate some newspaper printed and published at Topeka as the "official state paper," and to certify such designation to the secretary of state. The paper was to be designated for one year, and the state printer was to cause to be published therein all laws which should provide for their publication in any newspaper, the official syllabi of decisions of the supreme court, and all proclamations, orders, notices, and advertisements, with certain exceptions therein named. Section 8 of this act divided the public printing into eight classes, and provided compensation to the state printer for each. The seventh class in the act of 1875 corresponded to the eighth class in the act of 1869, but the rate to be paid to the state printer was reduced to 50 cents per square of 250 ems for the first insertion, and 25 cents per square for each subsequent insertion, and not more than $1 per 1,000 ems for the publication of syllabi of decisions of the supreme court and the laws. The act of 1875 was superseded and repealed by chapter 132, Laws of 1876, but the classification and the rates to be paid for publication in the official state paper remained unchanged.

In 1879, by § 104 of chapter 166 of the Laws of that year in relation to state departments, the ex-

ecutive council was required at its regular meeting in March of each year to designate the official state paper for the year from April 1, next ensuing; and by § 105 of the same chapter the publications to be made in said newspaper were enumerated, and it was provided that payment therefor should be made by the state "at the rates prescribed by law." By § 133 of said chapter, §§ 1, 2, 3, 4 and 5 of said act of 1876 were expressly repealed, said § 5 being that which required the designation of the official state paper by the state printer. Sections 6 to 18, both inclusive, of said act of 1876 were not expressly repealed, but it is claimed by the plaintiff that all that part of § 8 which regulated the price to be paid for publications in the official state paper was repealed by implication; and on August 5, 1879, the Hon. Willard Davis, attorney general, gave to the secretary of state his written opinion to that effect, and that such work must be paid for at the rates prescribed by § 17, chapter 39, General Statutes of 1868, which is now published as ¶ 3040, General Statutes of 1889, the part of said section claimed to be applicable, being as follows:

"For publishing any legal notice, or any order, citation, summons, or any other proceeding or advertisement required by law to be published in any newspaper, at a rate not exceeding $1 per square of 250 ems for the first insertion, and 50 cents per square of 225 ems for each subsequent insertion."

The *Kansas Breeze* was duly designated by the executive council as the official state paper for one year from April 1, 1895, and it has made certain publications as such which have been paid for at the rates prescribed by said act of 1876, but the plaintiff company, as the owner of said newspaper, claims additional payment based upon said § 17 of the act of 1868.

We are of opinion that the clause in § 8 of the act of 1876, prescribing the rates to be paid for publications in the official state paper, was not repealed by implication by said act of 1879, but that the same remains in force and governs the compensation to be paid for that service.   Repeals by implication, although not forbidden by the fundamental law, are not to be favored, especially in view of § 16 of article 2 of the constitution; and this court said, in the case of *Stephens v. Ballou*, 27 Kas. 594, 600, 601, that in order to declare any legislation repealed by that method the court "should be satisfied that such has been so done beyond all reasonable doubt."   The fact that the law was so changed as to vest the power of designation of the official state paper in the executive council instead of the state printer should have little, if any, weight in determining the rate of compensation to be paid for services performed, for in the nature of things the mere change as to the repository of power to make the designation could have no effect upon the rates at which such work could be afforded by the publisher, nor the value of the service to the public.   But it is said that under the act of 1876 the compensation was payable to the state printer, while by that of 1879 it goes direct to the publisher.   Certainly the latter would have no reason to complain of direct payment by the state instead of indirect requital through the state printer.   When it was provided by § 105 of said act of 1879 that payment for publications in the official state paper should be "at the rates prescribed by law" we think the legislature had reference to those rates then in force, and did not intend to double or quadruple them.   Besides, the compensation for the public printing had never been regulated

<span style="font-variant: small-caps">Public printing —compensation.</span>

by the act of 1868, which was approved before the state had a public printer or an official paper. That act seems to have been intended to regulate the fees and salaries of the several county officers, justices of the peace, constables, notaries public, referees, appraisers, witnesses, jurors, and printers ; but, as to the latter, the county printing and legal notices and work of like character chargeable to private persons must have been chiefly, if not wholly, in contemplation, for, except as to the publication of propositions to amend the constitution, and perhaps some other extraordinary matters, printing done for the state was then let by contract as before stated.   It was held by this court, in *City of Pittsburg v. Reynolds,* 48 Kas. 360, that a city ordinance requiring publication in order to make it effective was not a "notice or advertisement" within the meaning of chapter 156, Laws of 1891, and if the same rule is applicable to § 17 of chapter 39, General Statutes of 1868, then the question might well arise whether under it the publisher of the official state paper would be entitled to any compensation for printing the supreme court syllabi and the laws, since no specific provision is made therefor in said section, and it being very doubtful whether such work would come within any of the general terms employed therein. The argument in favor of the plaintiff's contention seems to be based wholly on the two circumstances that the power to designate the official state paper was changed by the act of 1879 from the state printer to the executive council, and that the act of 1876 made the compensation payable to the state printer, while under the act of 1879 it should be paid direct to the publisher of the paper ; but neither circumstance would necessarily affect the rate of compensation to be paid ; and when it was provided in § 105 of the act

of 1879 that payment should be made "at the rates prescribed by law," we think it evidence that the legislature meant the rates then in force for publications in the official state paper, there being no apparent intention to repeal that part of the act of 1876. It would be in the nature of a solecism to say that the provision of the statute fixing the rates for this particular work for several years next prior to the act of 1879 was repealed by its implication, notwithstanding the express declaration therein that payment should be made "at the rates prescribed by law." Instead of a repeal by implication, it appears to be a plain assertion by the legislature, to prevent any misapprehension growing out of the change of power to designate the state paper and awarding the compensation direct to the publisher in place of the state printer, that the rates then prescribed by law should remain in force.

It was developed in the oral argument that § 105 of the bill as reported to the legislature of 1879 expressly provided that the rates for the printing should be the same as prescribed by the act of 1868 relating to fees and salaries, but this was stricken out and the section was adopted in its present form. This is certainly strong, if not conclusive, evidence that the legislature did not intend to adopt the rates fixed by the act of 1868, but left them to be governed by the act then in force, which remained unrepealed.

The motion to quash the alternative writ will be sustained, and judgment will be entered in favor of the defendant.

ALLEN, J., concurring.

JOHNSTON, J. : I am unable to concur with my brethren in the view that has been taken. In effect it is

held that a statute which prescribes the duties and fixes the compensation of the state printer applies to another person in no way connected with that officer, and who performs services not required from the state printer.    It is true that prior to 1879 a large share of the printing now required to be done by the publisher of the official state paper was done under the control and direction of the state printer.    His work was classified, and a definite rate of compensation was prescribed for each class and kind of work.    He was required to designate a newspaper in which all publications required to be printed in a newspaper should be published.   The duty, however, of procuring the work to be done was imposed upon him alone, and the compensation was to be paid to him and to no one else. (Laws of 1876, ch. 132, § 8.)   In 1879 this duty was taken from him and imposed upon another.    All official publications required to be printed in a newspaper were directed to be published in an official state paper to be designated by the executive council. (Laws of 1879, ch. 166, § 105.)   By this provision that class of publications was extended beyond what it was when the duty of printing the same devolved upon the state printer.    The statute, however, did not provide that the compensation that had been paid to the state printer for the work should be the compensation to be paid to the publisher of the official state paper, and I have heard no satisfactory argument advanced why the compensation of one officer should apply to another, even for the same kind of service, in the absence of an express provision to that effect.    It is not uncommon for the legislature to provide that services theretofore performed by one officer, whose compensation is received in fees, shall be performed by another officer who likewise receives compensation

in fees ; but who would suppose that the legislature intended that the statutory fees for the former officer should be the rule of compensation for the latter, unless it had expressly declared that to be its purpose? The law of 1879, after including printing which had not been within the control and direction of the state printer, provided that payment should be made to the publisher of the official state paper at the rates prescribed by law. At that time there was a general statute on the subject of printing, applicable alike to all newspapers of every class in the state, and certainly broad enough to include the compensation to be paid for the printing and other work performed by the official state paper. (Gen. Stat. of 1889, ¶ 3040.) When the legislature of 1879 took from the state printer the duty of procuring public newspaper printing to be done, it also took from him the right to receive compensation therefor, and by the clearest implication repealed both the provision prescribing that duty and the one fixing the fees for the performance of the same. The general law relating to fees and salaries is prospective and perpetual in character, and intended to be applicable to all officers and for all kinds of services that may fall within its terms and provisions. The class of printing under consideration is fairly included within its terms, and, in my view, the legislature intended that to be the rule of compensation for publications in the official state paper. Immediately after the passage of the law the attorney general of the state so interpreted the statutes, and this has been the unvarying construction of the same by his successors in office and by the different incumbents of the office of secretary of state for a period of 16 years. That this rule had been adopted and acted upon was shown by public opinions and by the public records.

With this knowledge the legislature has repeatedly appropriated money to pay for this service at the rate prescribed by the general law, and in that way has approved and adopted the interpretation of the officers who had control of the printing and the appropriations to pay for the same. The fact that this has been the unvarying construction of the executive and legislative departments of the government from 1879 to 1895, although not controlling, is a weighty argument in favor of such a construction. Apart from that, however, I am clearly convinced from the language of the statutes referred to that the legislature did not intend that the fee bill prescribed for the state printer should be the measure of compensation for the publisher of the official state paper. I therefore think that judgment should be awarded in favor of the plaintiff.