THE STATE OF KANSAS V. M. W. WILCOX.

No. 12,936.   ( 68 Pac. 634.)

SYLLABUS BY THE COURT.

PHYSICIANS AND SURGEONS—*Act of 1901 Upheld.*   Chapter 254 of
the Laws of 1901 (Gen. Stat. 1901, §§ 6669–6677), "An act to cre-
ate a state board of medical registration and examination, and to
_.egulate the practice of medicine, surgery and osteopathy in the
state of Kansas, prescribing penalties for the violation thereof,
and repealing chapter 68 of the Session Laws of 1870," is a con-
stitutional enactment.

Appeal from Barton district court; ANSEL R. CLARK,
judge.   Opinion filed April 5, 1902.   Affirmed.

*A. A. Godard*, attorney-general, *Clad Hamilton*, and
*James W. Clarke*, county attorney, for The State.

*D. A. Banta*, for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: M. W. Wilcox was convicted upon
a charge of practicing medicine in Barton county with-
out a license, in violation of chapter 254 of the Laws
of 1901 (Gen. Stat. 1901, §§ 6669–6677), and he was
sentenced to pay a fine of fifty dollars.   On this ap-
peal, as in the court below, he urges that the act was
unconstitutional for several reasons, and that a com-
·pliance with its provisions cannot be enforced.

He first assails the act on the ground that it con-
tains more than one subject—one the creation of a
board of medical examination and registration, and
the other the regulation of the practice of medicine.
An examination of its provisions shows clearly enough
that only a single general subject is embraced in the
act, and that is the regulation of the practice of medi-
cine.   To accomplish this the machinery and means

of regulation are provided, among which is the appointment of a board to determine the qualifications and fitness of those who hold themselves out as practitioners. If the title had been "An act to regulate the practice of medicine and surgery," instead of the more elaborate one used, it would have covered every provision of the statute, and, under numerous decisions, would have been considered as a single subject, and not void because of its generality. (*Woodruff v. Baldwin*, 23 Kan. 491; *The State v. Stunkle*, 41 id. 456, 21 Pac. 675; *Blaker v. Hood*, 53 id. 499, 36 Pac. 1115, 24 L. R. A. 854, and cases cited; *Wilson v. Clark*, 63 id. 505, 55 Pac. 705.)

It is next contended that the act is prohibitive in its effects, and operates to exclude some persons from following their chosen vocations. It will operate to exclude those not qualified to practice, or, rather those who cannot show that they possess the standard of qualifications prescribed by the legislature. The provisions, however, fixing the standard and testing the qualifications of medical practitioners are not prohibitive in their nature, because, as was said in *The State v. Creditor*, 44 Kan. 565, 24 Pac. 346, 31 Am. St. Rep. 306, where the same question was raised, "the profession and practice are open to every citizen of the United States who is qualified, and who can produce evidence of the same." The police power of the state, upon which such legislation is founded, may be exercised in regulating the practice of medicine so as to protect the people from ignorance and incapacity, as well as from deception and fraud. It is true, as is contended, that an arbitrary discrimination against a citizen or a deprivation of the right to follow his calling or profession cannot be upheld. But it is not an arbitrary discrimination, nor an invalid deprivation

of right, to provide that only those possessing a knowledge of the human system, of its ailments and diseases, and who possess the skill to apply remedies and practice the art of healing, shall be allowed to practice. It was said in the case of *Williams v. The People*, 121 Ill. 87, 11 N. E. 881:

"It is the common exercise of legislative power to prescribe regulations for securing the admission of qualified persons to professions and callings demanding special skill; and nowhere is this undoubtedly valid exercise of the police power of the state more wise and salutary, and more imperiously called for, than in the case of the practice of medicine. It concerns the preservation of the health and the lives of the people."

So it was held in *The State v. Creditor*, supra, that it was competent for the legislature to prescribe the nature and extent of the qualifications required of those practicing medicine, dentistry, or surgery, and to prescribe rules for ascertaining whether those professing to practice come up to the legislative standard. If such regulations and conditions are adopted in good faith and operate equally upon all who may desire to practice, and who possess the required qualifications, the fact that the tests and conditions imposed by the legislature may be rigorous will not invalidate the legislation. In the case of *Dent v. West Virginia*, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623, it was said:

"The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty."

Statutes regulating the practice of medicine and

surgery were enacted as early as 1760, and they have been uniformly upheld when their validity was assailed in the courts. (*In the matter of Smith*, 10 Wend. 449; *The State v. Creditor*, supra; *Harding v. The People*, 10 Colo. 390, 15 Pac. 727; *The People v. Blue Mountain Joe*, 129 Ill. 377, 21 N. E. 923; *Driscoll v. Commonwealth*, 93 Ky. 393, 20 S. W. 431; *People v. Phippin*, 70 Mich. 6, 37 N. W. 888; *State v. State Medical Examining Board*, 32 Minn. 327, 20 N. W. 238, 50 Am. Rep. 575; *State v. Fleischer*, 41 Minn. 69, 42 N. W. 696; *Craig v. Medical Examiners*, 12 Mont. 210, 29 Pac. 532; *In re Roe Chung*, 9 N. M. 130, 49 Pac. 952; *State v. Van Doran*, 109 N. C. 869, 14 S. E. 32; *France v. The State*, 57 Ohio St. 1, 47 N. E. 1045; *Barmore v. State Board of Medical Examiners*, 21 Ore. 308, 28 Pac. 8; *People v. Hasbrouck*, 11 Utah, 292, 39 Pac. 918; *State v. Carey*, 4 Wash. 424, 30 Pac. 729; *State v. Buswell*, 40 Neb. 158, 58 N. W. 728, 24 L. R. A. 68; *The State, ex rel. Burroughs, v. Webster et al.*, 150 Ind. 607, 50 N. W. 750, 41 L. R. A. 212; *People v. Fulda*, 4 N. Y. Supp. 947; *State v. Mosher*, 78 Iowa, 321, 43 N. W. 202.)

It is said that the board of examination and registration may act arbitrarily and unjustly in passing upon the sufficiency of the diplomas presented and in determining the qualifications of proposed practitioners, but this is a presumption which the courts cannot indulge. On the contrary, we are to presume that this board, like all other tribunals vested with such powers, will act with judgment and conscience, and will deal justly with all applicants for license. It is vested with discretion to determine the standing of medical schools from which the diploma comes, and also whether a physician who submits to an examination possesses the requisite character, learning, and skill, but it is not an arbitrary, capricious and unre-

strained discretion.   The law requires that the board shall exercise an honest and impartial judgment and discretion, in accordance with just rules, and if the board should depart from this course and should act arbitrarily and unjustly toward applicants for license, the courts are open to them and will award them relief and protection.

In this connection, it is said that the applicant may be of a school of practice not represented on the board, and may become a victim of the envies and jealousies said to exist between medical men of the different schools.   To guard against partiality and injustice upon this and other grounds, the act provides that the board shall consist of seven members, who shall be physicians in good standing in their profession, and "who shall have received the degree of doctor of medicine from some reputable medical college or university not less than six years prior to their appointment; representation to be given to the different schools of practice as nearly as possible in proportion to their numerical strength in this state, but no one school to have a majority of the whole board."   There is nothing in the record to show that the board has not been chosen in compliance with these requirements, nor anything to show that the different schools of practice, including that to which defendant belongs, are not represented on the board which rejected the diploma presented by the defendant and which refused him a license.   The fear expressed that there may be more schools of practice than there are members of the board is not a practical question in this case.   No reason is seen why one member may not receive degrees from more than one school of practice ; and, besides, it does not appear that the school to which defendant adheres is not represented on the board,

nor that any physician in Kansas cannot submit his evidence of qualifications to members of the board who are of the same school of practice as himself.

The act is not invalid because it provides that "nothing in this act shall be construed as interfering with any religious beliefs in the treatment of diseases, providing that quarantine regulations relating to contagious diseases are not infringed upon." (Sec. 6; Gen. Stat. 1901, § 6674.) The express exclusion of the element of religious belief in the application of the law was hardly necessary. Religious freedom is guaranteed by the constitution, and without mention in the statute would have been implied, and we can see nothing in this provision which makes an illegal discrimination against or in favor of any class of physicians.

Nor is there any force in the objection to the provision making the statute inapplicable to the administration of domestic medicines, or to gratuitous services which one friend or neighbor may render to another. It is the practice of medicine and surgery for compensation that is sought to be regulated and controlled, and not the use of home remedies, nor the neighborly offices which one may kindly and gratuitously perform for another.

Other provisions of the law are criticized on the ground that they are arbitrary and unequal in their application, but we find nothing substantial in any of these objections, and the authorities already cited completely answer the criticisms that have been made.

So far as the sufficiency of the facts are concerned, it was admitted that on the date charged the defendant was a resident of Barton county, Kansas, and was engaged in the practice of medicine therein. It was further admitted that prior to that time he had made application to the state board of examination and reg-

istration for permission to practice in the state but that a certificate was denied him, and that on the day mentioned he did not have any certificate or license to practice medicine as required by the legislative act in question.   Later in the case, when the court was considering the motion for a new trial, the defendant expressly waived any question touching the sufficiency of the facts alleged in the information, and also any question arising as to the admission of testimony because of insufficient facts.   It was then stated that the only contention made was that the court erred in admitting any testimony of any kind, for the reason that the statute under which the prosecution was brought was unconstitutional and void for several reasons.   Under these stipulations and statements, no question as to the sufficiency of the facts was left open for consideration.

The judgment of the district court will be affirmed.

CUNNINGHAM, POLLOCK, JJ., concurring.