THE CITY OF WICHITA v. THE MISSOURI & KANSAS TELEGRAPH COMPANY *et al.*

**No. 13,807.**   (78 Pac. 886.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Telephone Companies—Title of Act Sufficient.*   The title of chapter 104 of the Laws of 1885 (Gen. Stat. 1901, §§ 1251, 1252), entitled "An act providing for the formation of telephone companies," is within the requirement of section 16 of article 2 of the constitution, that "no bill shall contain more than one subject, which shall be clearly expressed in its title."

2. ———— *Amendments—Telegraph and Telephone Companies— Valid Act.*   Chapter 104 of the Laws of 1885 (Gen. Stat. 1901, §§ 1251, 1252), conferring upon telephone companies all the rights given to telegraph companies by article 8 of chapter 23, General Statutes of 1868 (Gen. Stat. 1901, §§ 1342–1348), is not in contravention of the requirements of section 16 of article 2 of the constitution, that "no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended."

3. TELEGRAPH AND TELEPHONE COMPANIES—*General Telegraph Act Not Repealed by Charter Act.*   No part of the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8; Gen. Stat. 1901, §§ 1342–1348) was repealed by the charter act of cities of the first class (Laws 1881, ch. 37).

4. STATUTORY CONSTRUCTION—*Effect of General Repealing Clause.*   A general repealing clause in an act is a legislative expression which carries with it a repealing effect only where by law the effect would be the same without such repealing clause.

5. CITIES OF THE FIRST CLASS—*Telegraph and Telephone Companies— Use of Streets and Alleys.* The phrase, "to grant the right of way," in subdivision 22 of section 11 of the charter act of cities of the first class (Laws 1881, ch. 37; Laws 1903, ch. 122, § 53), construed with section 74 of the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8; Gen. Stat. 1901, §§ 1342–1348), gives to cities of the first class the right to determine and designate the streets and alleys of the city which may be occupied and used by the posts and wires of telegraph and telephone companies.

6. ——— *Police Powers over Telegraph and Telephone Companies.* The general police powers of cities of the first class may be exercised over telegraph and telephone companies within their corporate limits, together with such regulations as are by statute conferred upon cities of the first class.

Error from Sedgwick district court; D. M. DALE, judge.    Opinion filed December 1, 1904.    Affirmed.

*Earl Blake,* city attorney, *A. E. Helm, S. S. Ashbaugh,* and *David Smyth,* for plaintiff in error.

*C. V. Ferguson, F. F. Rozzelle, R. R. Vermilion, Frank Doster,* and *Edward P. Gates,* for defendant in error.

The opinion of the court was delivered by

ATKINSON, J.: This suit was commenced in the district court of Sedgwick county by the city of Wichita, a city of the first class, against the Missouri & Kansas Telephone Company, a corporation. In plaintiff's amended petition it was alleged that defendant was wrongfully obstructing the streets and alleys of the city by placing therein its poles and wires and by maintaining and extending its telephone system without the authority, consent or permission of the city. An injunction to prevent a further obstruction of the streets and alleys was asked, and it was also asked that upon the final hearing the defendant be required to remove from the streets and alleys its poles and

wires.   To this petition defendant filed a demurrer, which was sustained.   Plaintiff elected to stand upon its petition and judgment went for defendant.

The petition was voluminous.   It set out in detail the claims of the city for the relief demanded, and also the claims made by the telephone company of its right to occupy and use the streets and alleys of the city with its poles and wires.   The petition thus presenting the controversy was, in effect, a presentation of the respective claims of the parties upon agreed facts, and the sustaining of the demurrer was, in effect, the rendition of a judgment for defendant upon agreed facts.

Narrowed down, the respective claims of the parties are as follow : Plaintiff denied to the telephone company the right to occupy and use the streets and alleys of the city unless it should obtain such right through a franchise granted by the city council.   Defendant claims the right under the statute to occupy and use the streets and alleys of the city, independent of any grant, consent or permission by the city council.   We must look to the statute to determine the rights of the parties to this controversy.   This calls for an interpretion of certain statutory provisions.

Section 74 of chapter 23, General Statutes of 1868 (Gen. Stat. 1901, § 1342), confers upon telegraph companies the right to the occupancy and use of streets, in the following language :

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters."

The right to the use of the streets and alleys of

a city, conferred upon telegraph companies by said
section 74, is, however, restricted by section 78 of
chapter 23, General Statutes of 1868 (Gen. Stat. 1901,
§ 1346), in the following language:

"The council of any city or trustees of any incor-
porated town or village through which the line of any
telegraph corporation is to pass, may, by ordinance or
otherwise, specify where the posts, piers or abutments
shall be located, the kind of posts that shall be used,
the height at which the wires shall be run, and such
company shall be governed by the regulation thus
prescribed; and after the erection of said telegraph
lines, the council of any city or the trustees of any
incorporated town or village shall have power to
direct any alterations in the location or erection of
said posts, piers or abutments, and also in the height
at which the wires shall run, having first given such
company or its agents opportunity to be heard in
regard to such alterations."

The legislature, by chapter 104, Laws of 1885,
(Gen. Stat. 1901, §§ 1251, 1252), with the view of
conferring upon telephone companies the same rights
to the use of the streets and alleys as had been there-
tofore by article 8 of chapter 23 of the General Stat-
utes of 1868 (Gen. Stat. 1901, §§ 1342–1348) extended
to telegraph companies, enacted chapter 104, entitled
"An act providing for the formation of telephone
companies," which reads:

"SECTION 1. Corporations for the construction and
maintenance of a telephone line may be formed in the
mode and manner prescribed by the general laws of
this state for the creation of private corporations.

"SEC. 2. All such corporations shall have all the
rights and powers conferred, and be subject to all the
liabilities and duties imposed by the general laws of
this state upon telegraph corporations."

It is on the foregoing provisions of the statute that
defendant bases its claim of right to occupy and use

the streets and alleys of the city of Wichita with its poles and wires, independent of any grant, consent or permission by the city council.

It is contended by plaintiff that said chapter 104, Laws of 1885 (Gen. Stat. 1901, §§ 1251, 1252), entitled "An act providing for the formation of telephone companies," is unconstitutional, in that it fails to come within the requirement of section 16 of article 2 of the constitution, which reads:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed."

In view of the constitutional requirements the title to the act (Gen. Stat. 1901, §§ 1251, 1252; Laws 1885, ch. 104) is subject to criticism. With slight care in preparation language might have been employed which would have rendered it more explicit. The word "formation," however, as used in the title of the act, contemplates not only the right to incorporate—the right to make application for, and obtain, a charter for the purpose of engaging in the telephone business—as claimed by counsel for plaintiff, but comprehends all the rights that extend to a corporation authorized to engage in the telephone business. Thus interpreting the word "formation," the title of the act is within the constitutional requirement that "no bill shall contain more than one subject, which shall be clearly expressed in its title." It embraces but one subject—that of telephone companies. Comprehending, as it does in the use of the word "formation," all the rights conferred upon a telephone company by its charter of incorporation, the subject is clearly expressed in the title of the act.

In *The State v. Barrett*, 27 Kan. 213, in passing upon the sufficiency of the title to the prohibitory act, against which the claim was made that it failed to come within the requirement of section 16 of article 2 of the constitution, the court said :

"It is not necessary that the title to an act should be a synopsis or abstract of the entire act in all its details ; it is sufficient if the title indicates clearly, though in general terms, the scope of the act."

That the title to said chapter 104 is sufficient finds support in the following cases : *The State v. Wilcox*, 64 Kan. 789, 68 Pac. 634 ; *Wilson v. Clark*, 63 id. 505, 65 Pac. 705 ; *Blaker v. Hood*, 53 id. 499, 36 Pac. 1115, 24 L. R. A. 854 ; *The State, ex rel., v. Kansas City*, 50 id. 508, 521, 31 Pac. 1100 ; *The State v. Stunkle*, 41 id. 456, 21 Pac. 675 ; *The State, ex rel., v. Cross*, 38 id. 696, 17 Pac. 190 ; *Comm'rs of Cherokee Co. v. State, ex rel.*, 36 id. 337, 13 Pac. 558.

Chapter 104 of the Laws of 1885 does not amend the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8 ; Gen. Stat. 1901, §§ 1342–1348). In general terms, the act of 1885 conferred upon telephone companies the rights and powers extended to telegraph companies by the general laws of the state, subject to all the liabilities and duties imposed by the general laws of the state upon telegraph companies. The fact that the general laws of the state applicable to telegraph companies were by said chapter 104 conferred upon telephone companies, by reference thereto, without embodying in the act the language of the general laws applicable to telegraph companies, is urged by plaintiff as a failure to bring the act within the requirement of section 16 of article 2 of the constitution. The act of 1885 added nothing to, and took nothing from, the general laws applicable to telegraph

companies.  It therefore constituted no revivor of, or. amendment to, the general laws applicable to tele- graph companies.  Being no revivor thereof, or amend- ment thereto, but being in fact an act applicable to telephone companies only, and, as applicable to tele- phone companies, distinct within itself, it does not come within the requirement of section 16 of article 2 of the constitution, providing that no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended.

Counsel has called our attention to cases from the courts of other states holding it unconstitutional to incorporate a provision into an act of the legislature by reference to other acts.  An examination of the cases cited discloses that the constitutions of the states from which the cases are cited contain a provi- sion forbidding such legislation.  Our constitution contains no such provision.  However, legislation of that kind is not to be commended.

It is the claim of plaintiff that the charter act of cities of the first class, chapter 37, Laws of 1881, re- pealed sections 74 and 78 of chapter 23, General Statutes of 1868 (Gen. Stat. 1901, §§ 1342, 1346), by a general repealing clause.  It is pointed out that section 122 of the charter act (Laws 1881, ch. 37) is a general repealing clause.  As has been said by this court and other courts, a general repealing clause in an act is a legislative expression which car- ries with it a repealing effect only where by law the effect would be the same without such repealing clause.  (*Keirsey v. Comm'rs of Labette Co.*, 30 Kan. 576, 2 Pac. 864; *Hornaday v. The State*, 63 id. 499, 65 Pac. 656; *Turner v. State*, 111 Tenn. 593, 69 S. W. 774.)  In *Turner v. State, supra*, it was said:

"The last section of the act contains a general clause

repealing all laws in conflict with this act. But the repealing clause found in the last section of this act has no legal effect whatever. The act is precisely the same in legal import and in point of validity as it would have been without that clause, whose presence makes the act neither more nor less a repealing law. *State v. Yardley*, 95 Tenn. 558, 32 S. W. 481, 34 L. R. A. 656 ; *City of Memphis v. American Exp. Co.*, 102 Tenn. 341, 52 S. W. 172. The words of the caption, viz., 'and to repeal all laws in conflict with this act,' have no greater virtue or operation in law, not being followed in the body or enacting part of the bill with any repealing provision. Such words cannot of themselves, and without more, give character to the act, but are to be regarded as mere surplusage." (Page 606.)

With a general repealing clause in an act the intention to repeal must also be manifest in the legal effect of the latter act upon the former one. The test of a repeal should be, Are the two acts inconsistent, or repugnant, in their provisions ? If so the former must give way to the latter in so far, at least, as the two acts are inconsistent. If not inconsistent both should stand and be construed together.

It is also the claim of plaintiff that so much of the general telegraph act as is embodied in section 74 of chapter 23, General Statutes of 1868, extending to telegraph companies the right to occupy and use the streets for its poles and wires, has been repealed by implication. It is pointed out that subdivision 22 of section 11 of the city charter act (Laws 1881, ch. 37 ; Gen. Stat. 1901, § 717 *et seq.*) specifically gave the power "to grant the right of way for the erection of telegraph or telephone posts and wires along and upon any of the streets and alleys" of the city. It is claimed by plaintiff that this section operated as a repeal by implication, and in effect eliminated the word

"streets" from said section 74 of chapter 23, General Statutes of 1868. Subdivision 22 reads :

"Twenty-second : To grant the right of way for the erection of telegraph, electric light or telephone posts and wires along and upon any of the streets, alleys or ways of the city, and change, modify and regulate the same."

To this claim we cannot agree. Nowhere in the charter· act is reference made to the general laws relating to telegraph companies, nor is there any expression which may be fairly said to repeal, even by implication, the general telegraph laws. Unquestionably the legislature, by subdivision 22, in the use of the phrase "to grant the right of way," contemplated the granting of something. What it was the intention to grant is explained in the remaining words of the phrase. The words "the right of way" define the contemplated grant. We conclude that, as applied to telegraph companies and telephone companies, the right of way to which the grant applies is the right of the city to determine and designate the streets and alleys which may be occupied and used by the posts and wires of the companies. Thus construed there is no conflict between the charter act (Laws 1881, ch. 37) and the general laws applicable to telegraph companies. (Gen. Stat. 1868, ch. 23, art. 8 ; Gen. Stat. 1901, §§ 1342–1348.)

It would hardly be reasonable to presume that the legislature, in enacting a charter for cities of the first class, by the use of the word "grant" in connection with the term "telegraph company" had in contemplation the repeal of a general law or any part thereof applicable to telegraph companies, without making any specific mention thereof, and with the use of no language that may be fairly said to contemplate a re-

29—70 KAN.

peal. Under the well-known rules of construction we should give to the word "grant," as used in subdivision 22 of the charter act, a construction, if reasonably possible to do so, which will give effect to both the telegraph act (Gen. Stat. 1868, ch. 23, art. 8; Gen. Stat. 1901, §§ 1342–1348) and the city charter act (Laws 1881, ch. 37). Repeals by implication are not favored. (*Hornaday v. The State*, *supra; Kansas Breeze Co. v. Edwards*, 55 Kan. 630, 40 Pac. 1004; *Keirsey v. Comm'rs of Labette Co.*, *supra; The State v. Bancroft*, 22 Kan. 170, 211; *The State, ex rel. Tholen, v. Farrell*, 20 id. 214; *The State v. Young*, 17 id. 414; *Frost v. Wenie*, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614.)

It is urged by plaintiff that if a construction be placed upon subdivision 22 of section 11 of the charter act (Laws 1881, ch. 37) which gives to the word "grant," as therein contemplated, a limitation, such limitation should apply only to telegraph companies; that it should not be applied to telephone companies, as they are not by specific mention included in article 8 of chapter 23, General Statutes of 1868 (Gen. Stat. 1901, §§ 1342–1348). In further support of its position plaintiff says that if a limitation be imposed upon telephone companies in the construction of subdivision 22 of the charter act, the same limitation upon the term "grant" must be placed upon electric-light companies, since the three companies are named together in subdivision 22.

Telegraph companies and telephone companies are both public utilities used for the transmission of intelligence between distant places. The use of poles and wires, with electricity as the medium of transmission, is the same in both. To change one to the other is only to change the apparatus at the termini.

Substantially the same public function is being executed in substantially the same way by corporations employing either means of communication. There is really no difference in character between telegraph companies and telephone companies. The same language employed to extend rights to a telegraph company, with only the change of name, may be used to confer rights upon telephone companies. Because of this similarity in construction and use the courts of many of the states have held general legislative enactments extending rights to telegraph companies to include alike, and apply as well to, telephone companies. (*H. R. T. Co. v. W. T. & R. Co.*, 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838 ; *Chesapeake & Potomac Teleph. Co. v. Balto. & Ohio Teleg. Co.*, 66 Md. 399, 7 Atl. 809, 59 Am. Rep. 167 ; *Duke v. Central New Jersey Telephone Co.*, 53 N. J. L. 341, 21 Atl. 460, 11 L. R. A. 664; *Chamberlain v. Iowa Telephone Co.*, 119 Iowa, 619, 93 N. W. 596 ; *S. A. & A. P. Ry. Co. v. S. W. Tel. & Tel. Co.*, 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884 ; *P. Telephone Co. v. B. Turnpike Road*, 199 Pa. St. 411, 49 Atl. 284 ; *Northwestern T. E. Co. v. City of Minneapolis*, 81 Minn. 140, 86 N. W. 69, 53 L. R. A. 175 ; *The Wisconsin Telephone Co. v. The City of Oshkosh*, 62 Wis. 32, 21 N. W. 828.)

The legislature undoubtedly had in mind this similarity between telegraph companies and telephone companies when enacting subdivision 22 of the charter act (Laws 1881, ch. 37). This recognition by the legislature of the similarity between the two companies was made very apparent when, by chapter 104, Laws of 1885, there was conferred upon telephone companies all the rights given by statute to telegraph companies. There is not this similarity in the con-

struction, operation and use of electric-light companies, although all are public utilities, and are now classed among the necessities of modern city life. Undoubtedly the legislature could have extended to electric-light companies the same rights and limitations given to telegraph companies and telephone companies. It has not done so.

The main controversy in the case, as presented in the record, was the effect of subdivision 22 of section 11 of the charter act (Laws 1881, ch. 37) on the rights of telegraph companies and telephone companies under the statute to occupy and use the streets and alleys of the city of Wichita. Having held that the effect of the phrase "to grant the right of way," contained in subdivision 22, when construed with section 74 of the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8; Gen. Stat. 1901, §§ 1342–1348), gave to the city the right to determine and designate the streets and alleys which may be occupied and used by the posts and wires of telegraph companies and telephone companies; that chapter 104, Laws of 1885, (Gen. Stat. 1901, §§ 1251, 1252) was constitutional and operative, and that the charter act (Laws 1881, ch. 37) did not repeal the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8; Gen. Stat. 1901, §§ 1342–1348), or any part thereof, it may be asked, What are the further rights of the parties under the statute? As the case is presented, we are not called upon to define in detail the rights of the city, or the rights of the telephone company, under the statute. We shall not undertake to discuss in detail the effect of the provisions of the general telegraph act (Gen. Stat. 1868, ch. 23, art. 8), the later charter act of cities of the first class (Laws 1903, ch. 122), or any of the statutory provisions that may operate to

Railroad Co. v. Langley.

determine their respective rights. It can be said, however, that the general police powers of cities of the first class may be exercised by such cities over telegraph companies and telephone companies within their corporate limits, together with such regulations as are by statute conferred upon cities of the first class. The question whether the ordinances of the city of Wichita contained in the record are operative becomes immaterial in the view we have taken of the case.

The judgment of the district court is affirmed.

All the Justices concurring.