THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, Plaintiff*, v. THE TOPEKA CLUB, *Defendant.*

No. 16,603.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of Act—Statutory Construction.* When a statute is attacked as being in violation of section 16 of article 2 of the constitution, for the reason that it is not within the title of the act, such title will be liberally interpreted for the purpose of upholding the law.

2. ——— *Same.* It is not necessary that the title contain every detail of the entire act. It will be sufficient if it fairly indicates, though in general terms, its scope and purpose. "Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the body of the act without violating the constitutional inhibition." (*Lynch v. Chase*, 55 Kan. 367.)

3. ——— *Statute Relating to Intoxicating Liquors Held Valid.* Section 4371 of the General Statutes of 1909, being originally section 16 of chapter 128 of the Laws of 1881, the title to which enactment reads, "An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes," is within such title and is not unconstitutional.

Original proceeding in quo warranto. Opinion filed June 11, 1910. Judgment for the plaintiff.

*Fred S. Jackson*, attorney-general, *John Marshall*, assistant attorney-general, *Charles D. Shukers*, special

assistant attorney-general, and *J. J. Schenck,* county attorney, for the plaintiff.

*Charles Blood Smith,* and *John F. Switzer,* for the defendant.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in this court by the state to oust, enjoin and prohibit the Topeka Club, a corporation, from permitting intoxicating liquors to be stored, used, kept or delivered on its premises for the purpose of being used as a beverage, and from permitting people to resort there for the purpose of drinking intoxicating liquors as a beverage. The facts are substantially as follow:

The Topeka Club has been an incorporated body for twenty years. Its members are stockholders, and consist of prominent business and professional men who reside in the city of Topeka, except a few of its members, who are nonresidents of the city. The club owns a commodious building on Harrison and Sixth streets, which is provided with all the furniture and equipments necessary for the purposes of the club. The object of the club, as stated in its charter and as evidenced by the manner in which it has been conducted, is to furnish social enjoyment for its members and their families. It has a capital stock of $100,000, which is divided into 500 shares, of the value of $200 each. The building has three floors, and is arranged so that the wives and families of the members can procure meals and hold social entertainments, card parties, receptions and other social functions there. This feature has been largely patronized. The clubhouse is conveniently located with reference to both the business and the residence portions of the city. It has parlors, dining rooms, reception rooms, card rooms, reading rooms, sleeping rooms, a kitchen, and every equipment for social entertainment. Meals are served

regularly and members constantly patronize the dining rooms, and a few members make the club their permanent home. The management of the entire house is in charge of a steward, who resides in the building and is held responsible for the manner in which the club is conducted.

There is a room in the building called the "locker room," where there are eighty-seven lockers, furnished for the use and convenience of the members who desire them. These lockers are compartments fourteen by fifteen by eighteen inches. They are built like a filing cabinet or case of pigeonholes. Each locker has a door and lock and key, the key being in the possession of the owner. The locker may be used by the owner in which to keep anything desired. Its size and shape make it a very convenient place to keep bottles of beer, wine, whisky or other intoxicating liquors such as are sometimes used as a beverage at banquets and other social functions. These lockers are used principally for the safe-keeping of such liquors. Only fifteen members have lockers. The club does not furnish or purchase the liquor for those who have lockers. The employees of the club have nothing whatever to do with the liquor, except that when a member wishes to use some of the liquor belonging to him he furnishes a locker key to a waiter, who is authorized to procure the liquor and serve it. The glasses, ice and other things used in serving the liquor are the property of the club. The club does not receive anything, either directly or indirectly, for the liquors thus consumed; they belong to the member. At the time this action was commenced the club had 140 members.

Upon these facts the state presents a complaint which in its charging part reads:

"That the said defendant, the Topeka Club, in violation of the laws of the state of Kansas, and without authority therefor under its charter, as hereinbefore set out, now does exercise, and continuously for more

than five years last past has exercised, within the city of Topeka, Shawnee county, Kansas, the corporate right and franchise of keeping and maintaining a place where persons are and have been permitted to resort for the purpose of drinking intoxicating liquors as a beverage, and where intoxicating liquors are and have been kept for delivery to such persons in violation of law, and does now exercise, and continuously for more than five years last past, within the city of Topeka, Shawnee county, Kansas, has exercised, the corporate right and franchise of keeping a place for the storage of intoxicating liquors, to be there *used* as a *beverage,* and of keeping ice,. glasses, tables, chairs, ice boxes and other furniture, fixtures and property to be used in using such intoxicating liquors as a beverage at the place kept and maintained by the said defendant, where persons are and have been permitted to resort for the purpose of drinking intoxicating liquors as a beverage, and where intoxicating liquors are and have been kept for delivery in violation of law; and that the said defendant does now exercise, and continuously for more than five years last past has exercised, within the city of Topeka, Shawnee county, Kansas, the corporate right and franchise of keeping and maintaining a club-room and place in which intoxicating liquors are and have been *received* and *kept* for the *purpose of use as a beverage,* all contrary to the form of the statutes in such cases made and provided and in violation of the corporate rights, privileges and powers conferred by the charter of said defendant upon said defendant."

The real point to this charge is that the Topeka Club keeps and maintains a place where intoxicating liquors are permitted by it to be stored and kept for use by its members as a beverage, and beyond this permits members to bring a limited number of friends to participate with them in this convivial pleasure. It is claimed by the state that this violates section 4371 of the General Statutes of 1909 (Laws 1881, ch. 128, § 16), which reads:

"Every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist or

abet in keeping or maintaining any clubroom or other place in which any intoxicating liquor is received or kept for the purpose of *use,* gift, barter or sale *as a beverage,* or for distribution or division among the members of any club or association by any means whatever," etc.

It seems clear that the purpose of the locker system, and its only purpose, is to enable members of the club to have intoxicating liquors where they can be readily obtained for consumption as a beverage by themselves and their invited guests. It does not seem unreasonable, therefore, to say that the Topeka Club keeps and maintains a place where intoxicating liquors are received and kept for *use as a beverage.* This clearly violates the law.

It is urged, however, that such an interpretation of the statute makes it unconstitutional, as violative of section 16 of article 2 of the constitution, and the case of *The State v. Barrett,* 27 Kan. 213, is cited in support of this proposition. In our view that case does not go to the extent claimed by the defendant. It was there decided that section 19 of chapter 128 of the Laws of 1881, which prohibits persons from becoming intoxicated, was unconstitutional for the reason that becoming intoxicated is an offense not included in the title to the act. This action is brought under section 16 of the same chapter, and is therefore covered by the same title. The title does not embrace anything but the manufacture and sale of intoxicating liquors. It is argued that if becoming intoxicated is outside of the title it must be held that keeping intoxicating liquors for use as a beverage is also outside thereof, as it does not pertain to either the *manufacture* or *sale* of intoxicating liquors, and that the provision forbidding such act must for that reason be void under the clause of the constitution above mentioned. It is also contended that the use, keeping, storage or delivery of intoxicating liquor is not within this limitation and the statute prohibiting these acts is void.

It has always been the rule in this state to interpret titles to legislative enactments liberally, and not in a narrow or technical sense. In the case of *Lynch v. Chase,* 55 Kan. 367, it was said:

"It is not necessary that the title should be an abstract of the entire act, but it is deemed to be sufficient if the title fairly indicates, though in general terms, its scope and purposes. *Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the act without violating the constitutional inhibition.*" (Page 376.)

The expressed purpose of this act is to prohibit— that is, prevent—the sale of intoxicating liquors for other than the excepted purposes. The language used by Mr. Justice Brewer in the case of *The State v. Nickerson,* 30 Kan. 545, is pertinent here. It reads:

"By this section it is evident that the legislature recognized a fact, which is a matter of common knowledge, that human ingenuity is ever seeking some means to evade the prohibitions of the statute, and obtain a sale of liquors without transgressing the letter of the law; and intended to bring within the law and punish every disposition of liquor not expressly authorized and permitted." (Page 549.)

In the case of *Feibelman v. The State,* 130 Ala. 122, it was said:

"Our prohibition statutes very generally have provisions which are merely intended to be ancillary to, and to prevent evasions of, or to avoid difficulties of proof in respect of, their main purpose—to prevent the sale of intoxicants. For instance, it is quite usual for them to interdict the *giving away* of intoxicating liquors. Now it is not in the minds of the legislators that enough such liquor is going to be given away to constitute the evils intended to be eradicated; but it may well be that the prohibition of the sale could and would be evaded under the forms and color of gifts to such extent as to defeat in great measure the purpose of the statute. So, too, some of the statutes prohibit the sale, etc., of fruit preserved in alcoholic liquor, but this is not upon any idea that *bona fide*

sales or gifts of such fruits would emasculate the statute or would be an evil, but it is upon the other consideration that such sales, etc., would not be in good faith of the fruit, but that the fruit would be employed as a cover for transactions really involving sales of intoxicating liquors; and there is no doubt but that *bona fide* sales of fruit so preserved, not sales of the liquor preservative, may be prohibited because to allow such sales would open the door to mischievous evasions of the statute aimed at sales of intoxicating liquors." (Page 125.)

There is a collection of cases upon this subject in a note in 15 L. R. A., n. s., 430. It is there said (p. 431) that an Indiana statute relating to intoxicating liquors was entitled "An act to regulate and license the sale of spirituous liquors," etc. It prohibited the giving away of intoxicating liquors, and the question arose whether that provision was within the title of the law. The supreme court of Indiana held it to be properly connected with the subject embraced in the title, saying:

"One branch of the subject included in the title of the act in question is the licensing—the regulating—of the retail of intoxicating liquors. That subject includes the limitations as to time, place, person, quantity, etc., to be imposed upon the sale, and when we consider the object for which such a law was passed, viz., to prevent abuses that might flow from the unrestrained disposal of liquors in these respects, it would seem that the giving away under circumstances which might produce the same evil results as the selling would be a matter properly regulated in connection with the selling. Indeed it may be regarded as a necessary incident to a statute regulating the sale to secure its efficient operation. It is a necessary precautionary provision to prevent evasion of the prohibition to sell. All experience under license laws proves this." (*The State v. Adamson,* 14 Ind. 296, 297.)

(See, also, *Thomasson v. The State,* 15 Ind. 449; *Williams v. The State,* 48 Ind. 306.)

There is also a note with a collection of cases in 64 Am. St. Rep. 100, in which occurs the following:

"The title, 'An act to prohibit the sale of intoxicating liquors,' is not insufficient because of the fact that the

body of the statute makes it unlawful to 'sell' or 'give' the same away (*Parkinson v. State,* 14 Md. 184; 74 Am. Dec. 522; *Cearfoss v. State,* 42 Md. 403; *Carson v. State,* 69 Ala. 235), or because of a provision in the act against the sale of Plantation Bitters, or other intoxicating bitters sold under the name of patent medicines (*Howell v. State,* 71 Ga. 224; 51 Am. Rep. 259)."

The legislature doubtless believed that if persons were permitted to maintain clubrooms in which liquor is kept for use as a beverage the practice, however innocent in itself when carried on in good faith, might easily be converted into a medium for the sale of liquor under the form of maintaining a club, and to prevent this practice forbade a course of conduct where sales if made would be difficult to detect and punish. This same principle was followed by this court in the case of *Munroe v. City of Lawrence,* 44 Kan. 607. In that case an ordinance of the city of Lawrence was upheld which prohibited the sale of sweet cider in quantities of less than one gallon. It was conceded that sweet cider is a wholesome and harmless beverage, and that there is nothing vicious in its sale. But it was held that where liquids are sold by the drink the opportunities and temptations to evade the law against the sale of intoxicating liquors, prohibited both by the state and the city, are so great that the ordinance was a proper regulation as a means to prevent unlawful sales of such liquors. Presumably for the same reason the legislature has now prohibited the sale of intoxicating liquors even for the excepted purposes (Laws 1909, ch. 164; Gen. Stat. 1909, § 4361 *et seq.*), as it has been shown by experience that such sales afford so great an opportunity to evade the law that it could not be effectively enforced.

The main and principal object of this statute does not seem to be merely to prevent people from drinking their own liquor as a beverage, but its real purpose is to prevent the organization of associations for the purpose of maintaining a place where a large number of

people are permitted to keep intoxicating liquor and use it as a beverage. The Topeka Club has 140 members, each of whom under the rules of the association may bring a limited number of guests to enjoy a convivial visit with him. This clubhouse is furnished with all the equipment necessary for an enjoyable "feast of reason and the flow of soul," and is well calculated to attract the patronage of those who enjoy pleasures of this character. It may be said to the credit of the Topeka Club that not more than fifteen of its 140 members have lockers and take advantage of this privilege. This, however, is due to the character of its membership rather than to the character of the organization. If it should be held that a law which interdicts this practice is unconstitutional and void, or that the right of a member of such an association to invite guests to the clubroom, and there, with other members and their guests, indulge in drinking without limit intoxicating liquors which he provides and keeps in store there for such purpose, is identical with his right to invite the same guests to the private hospitality of his home and there, as a part of the social pleasures of an evening's entertainment, provide a limited quantity of wine, beer, or other intoxicating liquors, it seems reasonable to assume that such organizations would rapidly multiply in number, and under the opportunities thus afforded the law would be evaded to such an extent that the difficulties already encountered in its enforcement would be greatly increased. It may be assumed that these considerations were well known to the legislature when this statute was enacted, and that the chief purpose of this section was to prevent a practice which might encourage and perhaps lead to sales of intoxicating liquors at such places. It is therefore fairly within the scope of the title of the act, and is not unconstitutional.

It may be said of this club that on account of the careful manner in which it has been managed no se-

rious objections have been urged against it, but under the rules and regulations which it has adopted an association of men inclined to violate the law and trespass upon the peace and good order of society might become a very unsatisfactory and objectionable institution.

Judgment for the plaintiff.

PORTER, J., not sitting.