No. 43,496

STATE OF KANSAS, *Appellee,* v. WAYNE D. EARLEY, *Appellant.*

(386 P. 2d 221)

Opinion
filed November 2, 1963.

*David R. Gilman*, of Overland Park, argued the cause and was on the briefs for the appellant.

*B. D. Watson*, County Attorney, argued the cause, and *William M. Ferguson*, Attorney General, and *Monte Heasty*, Assistant County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a conviction of burglary in the second degree and attempted grand larceny.

The evidentiary facts supporting the conviction will be summarized.

The home of Mr. and Mrs. John Silvey in Independence, Kansas, is located about a block from the Dr. Pepper Bottling Company plant. This plant is lighted by floodlamps at night. The occupants of the home have an unobstructed view of the East and North sides of the plant building.

At about 9:00 o'clock P. M. on September 3, 1962, Mr. and Mrs. Silvey saw four men at the East Side of the plant building. They could not discern the features of these men but they were all fairly tall and one of them had on a light colored shirt. As they continued to observe the four men, a car passed the bottling plant and they saw four men crouch down behind some crates. When the car passed, the Silveys saw the four men enter the building by a side door and disappear inside. Mr. Silvey then called the police. Within a short time a police car came from the East and circled the bottling company building. As the police car completed its circle and came back by the door, which the four men had used in entering, the Silveys saw one man emerge from the plant through the same door. They could not discern the features of this man nor did they know who he was but they did see that he was fairly tall and that he had on a light bright colored shirt. After the man in the light colored shirt emerged from the bottling plant, the Silveys saw him start walking east away from the building across the parking area to a point where he was stopped by the officers in the police car. They also saw the man placed in the police car and then observed the car with the officers and the man drive off.

Further investigation by the officers disclosed that the glass from the door on the east of the plant building had been broken out; that such door had been forced open; that broken glass was strewn about the floor of the building; that the company's safe had been removed to the rear next to the large overhead door on the east side of the building; that the dial of the safe had been knocked off and the safe bore evidence of pry marks; that scattered about the safe on the floor were various hand tools; and that glass particles found in the soles of the defendant's boots were similar spectroscopically to glass found on the floor of the building.

When defendant, Wayne D. Earley, was apprehended by the officers he was wearing a pink shirt.

The appellant specifies three trial errors, other than the overruling of his motion for a new trial.

The first contention is based on the premise that the trial court erroneously refused his request for a continuance.

Appellant had subpoenaed a witness who had attended the first day of the trial. When this witness was called to testify it was discovered that he was at home ill and confined to his bed. Thereupon appellant orally requested a continuance. Without submitting an affidavit his counsel made a statement as to what the testimony of the missing witness would be. The State refused to stipulate that the witness would so testify. Appellant then requested that the case be passed for a few days. The court stated that it did not want to keep the jury under scrutiny and admonishment for a week, but that it would continue the case to the next term if appellant would pay the costs. Counsel for appellant stated that he was unable to pay the costs. The court considered the testimony of the appellant's continuous employment while on bail, also other obvious facts, and concluded that he was able to pay the costs. It then denied the continuance.

Continuances in a criminal case are governed by the provisions of the statute applicable to continuances in civil cases. See G. S. 1949, 62-1414.

The applicable section of our civil code is G. S. 1949, 60-2934. It provides in part:

"A motion for a continuance on account of the absence of evidence can be made only upon affidavit; . . . and if it is for an absent witness the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time,

and what facts he believes the witness will prove, and that he believes them to be true. . . ."

The foregoing statute clearly states that a motion for continuance on account of an absent witness must be made upon affidavit. The requirement is mandatory. See *Minch v. Winters,* 122 Kan. 533, 541, 253 Pac. 578; *State v. Stephens,* 146 Kan. 660, 661, 72 P. 2d 975; *State v. Smith,* 173 Kan. 807, 811, 252 P. 2d 917.

A continuance may also be granted under the provisions of G. S. 1949, 60-2933, which states:

"The court may for good cause shown continue an action at any stage of the proceedings upon such terms as may be just. When a continuance is granted on account of the absence of evidence, it shall be at the cost of the party making the application, unless the court otherwise order."

The court offered to grant the appellant a continuance to the next term on his paying the costs which had accrued in the trial. The appellant refused and he is in no position to complain on appeal.

There is another reason why appellant's contention on the point now under consideration is without merit. The record clearly discloses the testimony of the absent witness would have been cumulative of the testimony given by the State's witness. He would have testified that shortly after the burglary he drove by the Dr. Pepper plant and saw three men at the East door but could not identify them. After he turned around and approached with his lights on, he identified the men as investigating officers. The testimony of Mr. and Mrs. Silvey was to the same effect. They saw four men but they did not attempt to identify them. They only discerned four tall men, one of whom was wearing a light colored shirt, and they were unable to identify the defendant.

The testimony of the absent witness would have served no purpose as it did not purport to rebut the testimony of the State's witnesses as to appellant's identity.

In *Konitz v. Board of County Commissioners,* 180 Kan. 230, 235, 303 P. 2d 180, we said:

". . . Nor was it alleged that the affiant believed the nature of the evidence to be true. The trial court did not abuse its discretion in overruling the motion by reason of plaintiffs' failure to comply with the statute. Moreover, as disclosed by the record, what plaintiffs thought the absent witness would testify to was nothing more than cumulative evidence of other witnesses who testified for plaintiffs. (See *Lamer v. Lamer,* 170 Kan. 579, 583, 228 P. 2d 718.)" (p. 235.)

The granting of a continuance is largely in the discretion of the trial court. Its ruling will not be disturbed unless it appears that such discretion has been abused and the substantial rights of the accused prejudiced. The record is devoid of any such showing.

Appellant's next contention is that the mention of prior convictions was improperly injected into the case.

The appellant called his employer as a character witness. The employer testified that he was the appellant's employer, that he had known him for about a year, and that his reputation was good. The employer testified on cross-examination that he interviewed the appellant for employment and inquired into his background and personal history. He further testified:

"Q. Did he tell you at that time that he had ever been previously arrested? A. No, not at that time.

"Q. He didn't mention the fact that he had been arrested once for being drunk and for disorderly conduct and a second time for larceny?

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. You say he didn't tell you those things? A. No."

A witness who testified as to the good character of the accused may be questioned as to knowledge of traits or acts inconsistent therewith.

In *The State v. Killion,* 95 Kan. 371, 378, 148 Pac. 643, we said:

".   .   . Where witnesses have testified to the good character of the defendant it is permissible to inquire of them whether they have not heard reports of particular instances which are inconsistent with the good reputation to which they have testified, and in that way seek to weaken or qualify the testimony which they have given. (*The State v. McDonald,* 57 Kan. 537, 46 Pac. 966; *The State v. Yeater,* ante, p. 247, 147 Pac. 1114; 12 Cyc. 416.)" (p. 378.)

See, also, *The State v. McDonald,* 57 Kan. 537, 539, 46 Pac. 966, which we pause to note is cited with approval in *State v. McKee,* 131 Kan. 263, 265, 291 Pac. 950, where this court said:

".   .   . It is not generally permissible, after a witness has testified to the fair reputation of a defendant in a particular respect, to cross-examine as to specific acts, doings or offenses of the defendant; but, as the general reputation of any person is established by the opinions of witnesses as to the general estimation of his character, it is allowable to call their attention to reports inconsistent with such good reputation, and thus to weaken or qualify the testimony of such witnesses; and on this principle the Court did not err in the latitude allowed in cross-examination in this respect. . . ." (pp. 539, 540.)

We have examined the case of *State v. Stephenson,* 191 Kan. 424, 381 P. 2d 335, cited by appellant in support of this contention. That case involves the introduction of evidence of previous con-

victions in the State's case in chief, and is neither applicable to, nor controlling of, the facts in the instant case.

Finally appellant contends that the Act under which he was convicted, *i. e.*, Laws of 1953, Chapter 184 (now G. S. 1961 Supp., 21-520), violates the portion of Article 2, Section 16 of the Constitution of the State of Kansas which reads: "No bill shall contain more than one subject, which shall be clearly expressed in its title, . . ."

The Act, Laws of 1953, Chapter 184, omitting certain provisions regarded as here immaterial, reads:

"AN ACT relating to burglary in the second and third degree, amending section 21-520 of the General Statutes of 1949, and repealing said original section.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. Section 21-520 of the General Statutes of 1949 is hereby amended to read as follows: Sec. 21-520. Every person who shall be convicted of breaking and entering in the nighttime— . . . , any shop, store, booth, tent, warehouse, or other building, or any boat or vessel, in which there shall be at the time some human being, or any goods, wares or merchandise, or other valuable thing kept or deposited; . . . with the intent to steal or commit any felony therein, shall on conviction be adjudged guilty of burglary in the second degree: *Provided,* That if the evidence produced at any trial of any person charged hereunder, shall in the opinion of the jury or judge, if tried to the court, be insufficient to prove that the alleged crime was committed in the nighttime, the jury or judge, if tried to the court, may find the defendant guilty of burglary in the third degree and if the jury or court shall so find, such defendant shall be punished as provided by section 21-523 of the General Statutes of 1949 or any amendments thereto."

Appellant suggests that the statute provides for punishment which is not contained in the title.

The purpose of the title is call attention to the contents of the bill so members of the Legislature and the general public may be fairly informed as to what the Act implies. (*City of Lawrence v. Robb,* 175 Kan 495, 502, 265 P. 2d 317; *State, ex rel., v. City of Wichita,* 184 Kan. 196, 199, 335 P. 2d 786.)

It is not necessary that the title be an index, a synopsis or abstract of the entire Act in all its details. It is sufficient if the title indicates clearly, though in general terms, the scope of the Act. (*In re Sanders, Petitioner,* 53 Kan. 191, 198, 199, 36 Pac. 348.)

The more general the language of the title the broader the subject matter of the Act may be, due reference being given to the requirements of Article 2, Section 16, that the subject matter be clearly

expressed in the title. (*State, ex rel., v. City of Wichita*, 199, supra; *State, ex rel., v. McCombs*, 129 Kan. 834, 838, 284 Pac. 618.)

Whenever the penalty is fairly incidental to the regulation of the subject expressed it may properly be included in the Act without special mention in the title. (See *Bourke v. Dickson*, 115 Kan. 71, 73, 222 Pac. 94; *The State v. Scott*, 109 Kan. 166, 167, 168, 197 Pac. 1089; *The State v. Wilcox*, 64 Kan. 789, 790, 68 Pac. 634.)

Where an Act deals with burglary any reasonable person would anticipate some provision for punishment.

Appellant also suggests that the Act contains a plurality of subjects—burglary in the third degree and burglary in the second degree.

It is true that the Legislature cannot legislate on two unrelated subjects in the same bill. (*State, ex rel., v. Shanahan*, 178 Kan. 400, 286 P. 2d 742.) However, the Act under consideration does not deal with unrelated subjects.

Burglary is commonly understood as breaking and entering for the purpose of committing a theft. Burglary in the second degree constitutes breaking and entering in the nighttime for the purpose of theft. Burglary in the third degree constitutes breaking and entering in the daytime for the purpose of theft. The two are very closely related.

In *Shrout v. Rinkekr*, 148 Kan. 820, 822, 84 P. 2d 974, the purpose of the constitutional restriction was stated:

". . . The reason for the constitutional provision that an act shall not contain more than one subject, which shall be clearly expressed in its title, is to prevent two or more unrelated subjects being covered in an act so that members of the legislature would feel that they should vote for a bill which contained a provision to which they were opposed in order to secure the enactment of the bill with some provisions they considered important. . . ." (p 822.)

There is not such a distinction between second and third degree burglary as to influence the legislature to vote for or against the enactment of Laws of 1953, Chapter 184, now G. S. 1961 Supp., 21-520.

Our careful review of the record fails to disclose any trial errors, or defects in the statute under which the accused was convicted, justifying a reversal of this case.

The judgment is affirmed.