NOT DESIGNATED FOR PUBLICATION

No. 127,387

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EARL RAY HARRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI A. BOLTON FLEMING, judge. Oral argument held September 16, 2025. Opinion filed November 21, 2025. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and CLINE, JJ.

CLINE, J.: Earl Ray Harris appeals his conviction for aggravated interference with the conduct of public business, in violation of K.S.A. 21-5922(b). He claims the statute is unconstitutional and the State did not prove all the elements necessary to convict him.

But Harris did not challenge the constitutionality of K.S.A. 21-5922 until his appeal to this court. Appellate courts "generally do not address legal theories raised for the first time on appeal, even those of constitutional dimension." *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024); see also *Moody v. NetChoice, LLC*, 603 U.S. 707,

1

708, 144 S. Ct. 2383, 219 L. Ed. 2d 1075 (2024) (appellate court is "'a court of review, not of first view'"). This rule is rooted in principles of due process and fairness to the opposing party.

Appellate courts tread into dangerous territory when they step outside the rules governing the adversarial process and the roles of various courts within that process. In our system of justice, the parties develop the record and their arguments in the district court. Appellate courts then review the district court's decision to determine whether that court made a mistake. When determining whether a mistake was made, we should avoid reimagining that decision based on facts or arguments not presented as factors for the district court to consider. We therefore decline to consider Harris' new constitutional challenges on appeal.

The only other challenge Harris raises on appeal is his contention that the State presented insufficient evidence to convict him. He claims the State had to prove his action occurred inside a public building. But the Legislature did not draft K.S.A. 21-5922 so narrowly. Along with other actions, the Legislature criminalized "knowingly impeding any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof." K.S.A. 21-5922(a)(2). The Legislature did not specify that this behavior must occur inside a public building. Since Harris was charged with the aggravated commission of the actions prohibited by subsection (a)(2)—which need not occur inside a public building—we affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2019, employees of the city of Girard were cleaning out a drainage ditch in the right-of-way at Harris' property. Harris was "very upset" that this work was taking place. He told the city employees to stop multiple times in the months before when

they performed similar work, even jumping onto the excavator once. That day, Harris drove to city council member Michael West's house and expressed his anger about the work. West had lived in Girard since 1976 and had known Harris since he was a kid. West recalled that Harris was "shaking" and "very agitated." Harris told West that West "knew what happened when [Harris] had had enough, and it is 'going to get bad.'" When Harris left West's house, West called the police because he had never seen Harris that "upset and mad." West was concerned that Harris would be violent.

After leaving West's house, Harris drove to the ditch site. He stepped out of his car with a shotgun and a step stool, gave the city employees a smirk, walked across the road and down through the ditch. Harris then walked onto his property, made eye contact with one of the city employees, unfolded the step stool, and sat down with his gun. Although not specified in the record, Harris claims he had his back to the city employees when he sat down.

The city employees stopped work and called the police. One of them got out of the excavator and hid behind a dump truck. He saw Harris waiting there with his gun in his lap, and the employee was "scared of getting shot." Another city employee said later that he feared for his life.

When a Girard police officer arrived, he saw Harris sitting on a step stool in the middle of his property with a long gun in his lap. The officer ordered Harris to put his gun down and show the officer his hands, which Harris did.

The State charged Harris with one count of aggravated interference with the conduct of public business in violation of K.S.A. 21-5922(b), a severity level 6 person felony. The charge stated: "Earl Ray Harris, then and there being present and while in possession of a weapon, to-wit: a shotgun, did unlawfully, feloniously and knowingly impede a public employee or official in the lawful performance of duties or activities

3

through the use of intimidation, force or violence or any threat thereof." K.S.A. 21-5922(a)(2), (b) states:

> "(a) Interference with the conduct of public business in public buildings is:
>
> . . . .
>
> (2) knowingly impeding any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof;
>
> . . . .
>
> "(b) Aggravated interference with the conduct of public business is interference with the conduct of public business in public buildings, as defined in subsection (a), when in possession of any firearm or weapon as described in K.S.A. 21-6301 or 21-6302, and amendments thereto."

The State also charged him with two counts of aggravated assault in violation of K.S.A. 21-5412(b)(1), a severity level 7 person felony. Harris went to trial on these charges.

Before trial, Harris moved to dismiss count one—aggravated interference with the conduct of public business. He claimed both the title of the statute and the crime state that the conduct must occur in a public building. The district court denied his motion. It reasoned that while the title of the crime does state "in public buildings," the elements listed under K.S.A. 21-5922(a)(2) do not require the prohibited conduct to occur in a public building.

The jury found Harris guilty of the crime of aggravated interference with the conduct of public business in a public building, but it did not find Harris guilty of either count of aggravated assault.

The district court sentenced Harris to 18 months in prison, but it suspended his sentence and placed him on 24 months' probation after 7 days in jail.

REVIEW OF HARRIS' APPELLATE CHALLENGES

I. *Harris has not preserved his constitutional challenges to K.S.A. 21-5922(a)(2).*

Harris raises several constitutional challenges to K.S.A. 21-5922(a)(2) for the first time on appeal. To begin, he claims it is overbroad because he alleges the statute's use of the word "intimidation" punishes constitutionally protected expressive conduct. Next, Harris argues K.S.A. 21-5922(a)(2) is unconstitutional as applied to him because he characterizes his actions as a lawful protest and an exercise of his Second Amendment right to possess a firearm under the United States and Kansas Constitutions. Last, Harris argues K.S.A. 21-5922(a)(2) is unconstitutionally vague because it is "impossible to understand" what intimidating acts would lead to an arrest and prosecution.

As mentioned previously, appellate courts generally do not address issues raised for the first time on appeal, even those of constitutional dimension. *Mendez*, 319 Kan. at 730. This rule serves important purposes, such as promoting efficiency and reducing gamesmanship. Simchi-Levi, *Preservation: What Is It Good For?* 37 Pace L. Rev. 175, 180 (2016). But an appellate court may consider a newly raised issue when certain recognized exceptions apply. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). These exceptions include:

> "'(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason.'" *In re N.E.*, 316 Kan. 391, 407-08, 516 P.3d 586 (2022).

5

The decision to review an unpreserved claim under these exceptions is a prudential one. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017); *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). So even if an exception supports a decision to review a new claim, we have no obligation to do so. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

> *We decline to consider Harris' facial overbreadth challenge for the first time on appeal.*

Harris first claims the statute's use of the word "intimidation" renders it unconstitutionally overbroad. He recognizes that he failed to preserve this argument, so he invokes two of the recognized exceptions. First, he claims we must consider his argument to prevent a denial of his "fundamental right to engage in conduct expressing his anger, dissatisfaction, and disapproval" and his "right to a jury verdict under a statute that is constitutionally limited in scope." Later in his brief he repackages these concepts more precisely as being included within his First Amendment freedom of speech and expression rights under the United States and Kansas Constitutions. Harris also claims his challenge involves only a question of law on proven facts since it is directed at the language of the statute—known as a facial challenge—instead of its application to the facts of his case.

While we agree the First Amendment rights Harris invokes are indeed fundamental, our power to apply the preservation exceptions is prudential—not perfunctory—for good reason. The United States Supreme Court has cautioned that application of the overbreadth doctrine is "strong medicine" to be used "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). And our own Supreme Court has found no abuse of discretion when our court declined to take up a facial overbreadth argument for the first time on appeal. *State v. Jones*, 313 Kan. 917, 932-33, 492 P.3d 433 (2021).

6

The separation of powers doctrine requires courts to presume a statute is constitutional, and we must resolve all doubts in favor of a statute's validity. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 883-84, 179 P.3d 366 (2008); see *In re A.B.*, 313 Kan. 135, 138, 484 P.3d 226 (2021). While First Amendment rights are vitally important, so is the structure of our government. Judicial invalidation of laws, although required in some instances, is a power that must be exercised with restraint because it "'frustrates the intent of the elected representatives of the people.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008). And it has serious and potentially disruptive consequences which cannot be undertaken lightly because "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." 552 U.S. at 451. These considerations lead us to refrain from invoking the first exception to consider Harris' unpreserved claim.

We are equally skeptical of applying the other exception, which allows consideration of legal questions on proven facts. To succeed in his overbreadth challenge, Harris would need to demonstrate that the statute "'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 599 U.S. 762, 770, 143 S. Ct. 1932, 216 L. Ed. 2d 692 (2023). Yet the parties have not addressed—either before the district court or on appeal—the range of activities the law covers or compared its alleged illegitimate applications to its legitimate ones.

Instead, Harris simply offers a few anecdotes of alleged protected speech which could be perceived as intimidating. But his examples fall outside the scope of the statute since they either do not involve public officials or employees (such as a sports fan cursing an athletic official or a homeowner loudly threatening to withhold a carpenter's pay) or they involve an offender's actions which only very questionably could be characterized as "knowingly impeding" the object of the intimidation's work (such as a professor ridiculing a student, a parent yelling at a teacher, a judge sternly lecturing a

litigant, and demonstrators holding signs in front of a public official's home). Such hypotheticals do not assist in locating the boundaries of the statute or its permissible scope.

The United States Supreme Court recognized the imprudence of trying to address a facial challenge with an insufficiently developed record in *Moody*, 603 U.S. at 726. It vacated two circuit opinions which had not properly considered facial challenges and then described the robust inquiry necessary to undertake such a challenge. 603 U.S. at 722-27. It declined to take up the issue—since it is a "'court of review, not of first view.'" 603 U.S. at 726. And it acknowledged the value in developing the record for such a challenge in the district court, which can "explore the laws' full range of applications— the constitutionally impermissible and permissible both—and compare the two sets." 603 U.S. at 726. We find this approach equally advisable here.

For these reasons, we also find it imprudent to take up Harris' challenge posed as a purely legal question—the second preservation exception—and decline to consider invalidating the Legislature's actions without development of the important issues to be considered.

*We decline to consider Harris' as-applied overbreadth challenge for the first time on appeal.*

Harris also argues the statute was unconstitutionally overbroad as applied to him because its use of the word intimidation allowed a jury to convict him for actions which he characterizes as a "peaceful protest on [his] own property . . . against the city workers." He admits he failed to preserve this argument as well but invokes the same exceptions.

8

Yet the same concerns that plague Harris' facial overbreadth challenge caution against taking up his as-applied overbreadth challenge. And the development of the factual record is even more important here. Unlike a facial challenge, an as-applied claim looks at whether the factual circumstances in the case create a constitutional violation. *State v. Hall*, 65 Kan. App. 2d 369, 389, 564 P.3d 786, *rev. denied* 320 Kan. 864 (2025).

As Harris admits, the First Amendment permits a State to ban a "true 'threat.'" *Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). This means that whether Harris' actions could be seen as threatening is a factual determination necessary to adjudicate his challenge. Yet this court does not make factual findings; it reviews those made by district courts. *State v. Hutto*, 313 Kan. 741, 746, 490 P.3d 43 (2021).

Harris seems to be essentially challenging the sufficiency of the evidence that his actions were intimidating, pointing to facts which he believes demonstrate his actions were peaceful. But since he does not brief this argument, we cannot consider it. *State v. White*, 53 Kan. App. 2d 44, 60, 384 P.3d 13 (2016) (rejecting sufficiency of the evidence claim couched as an as-applied overbreadth challenge for failure to brief it). And, again, the factual record he relies on was created without the benefit of either the State or the district court knowing Harris was raising an as-applied challenge.

Harris' contention that no facts could have been developed to aid our resolution of the issue is a bold assumption:

> "To suggest that an appellate court can look at the record and conclude that no additional, relevant evidence could have been introduced on a completely new legal issue had the parties known it would be decisive in the case simply flies in the face of what we know about the trial process. No case is tried so completely and competently that an appellate court can confidently say that the trial would have gone exactly the same way if a new, determinative, legal issue had been raised in the trial court." Martineau, *Considering New*

9

*Issues on Appeal: The General Rule and the Gorilla Rule*, 40 Vand. L. Rev. 1023, 1037 (1987).

Because Harris raises a fact-intensive challenge based on an underdeveloped record, we find none of the recognized exceptions allow us to consider his unpreserved as-applied challenge.

   *We decline to consider Harris' contention that the statute is void for vagueness for the first time on appeal.*

   Harris next argues for the first time on appeal that the inclusion of the word intimidation in the statute renders it unconstitutionally vague. He claims this language renders the statute "too broad to give anyone of ordinary understanding a clue as to which acts will trigger a prosecution and which will not." He also contends this language gives "almost limitless discretion to authorities to arrest and prosecute someone under this statute." Not only does Harris provide a cursory recitation of the preservation exceptions he is invoking, but his argument is just as abrupt. And it is missing key components relevant to this analysis.

   To begin, Harris does not consider the context of the statute's use of the word intimidation. The crime Harris was convicted of prohibits "knowingly impeding any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof." K.S.A. 21-5922(a)(2). Since "intimidation" is included in a list of actions, the *noscitur a sociis* canon of statutory construction requires a court to compare the elements of the list to determine the meaning of any one item. *State v. Spencer*, 291 Kan. 796, 808, 248 P.3d 256 (2011). Yet Harris provides no analysis of this issue, nor does he address, as the State points out, how other words in the statute temper its scope, such as the requirement that the action "knowingly imped[ed]" the public official or employee's work. This analysis is critical to his challenge since the United States Supreme Court "has

recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

Next, Harris fails to provide any analysis on the factors courts traditionally consider in void for vagueness challenges. While courts start with the language of the statute in these challenges, they also consider "any narrowing construction courts have given" the statute as well as the "interpretation or application of the statute in question by those charged with enforcing it." *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1152 (10th Cir. 2020). Harris contends the word "intimidate" is unconstitutionally vague since he claims it could include "shouting, or a raised voice, or a hand gesture," but he provides no examples of anyone interpreting the statute to include these actions. And, again, he looks at this word in a vacuum instead of the way it is used in the statute.

Since Harris' vagueness argument is a facial challenge, it must confront the same obstacles as his facial overbreadth challenge:

> "The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination. Courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute to be in the public interest; what the views of the members of the court may be upon the subject is wholly immaterial. It is not the province nor the right of courts to determine the wisdom of legislation touching the public interest, as that is a legislative function with which courts

11

cannot interfere." *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 74, 697 P.2d 1310 (1985).

These are daunting considerations. Yet Harris offers barely a page of argument on this point. We find it would be imprudent to exercise our discretion to consider such a truncated argument—especially one with such serious implications.

> *We decline to consider Harris' contention that the statute as applied to him violated his Second Amendment right to bear arms for the first time on appeal.*

Harris' last constitutional argument is another as-applied challenge. That is, he asserts that the application of the statute to him violated his Second Amendment right to bear arms. Again, he admits he failed to preserve this argument but invokes the same exceptions since his fundamental Second Amendment right is at issue. But while he claims the "second exception" applies, he offers no analysis as to why his argument presents a legal question on proven or admitted facts. As explained above, as-applied challenges are fact-intensive and the parties here certainly contest material facts regarding Harris' conduct. *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 4, 446 P.3d 1103 (2019) ("[A]n as-applied challenge contests the application of a statute to a particular set of circumstances, so resolving an as-applied challenge 'necessarily requires findings of fact.'").

Like with his previous assertions, Harris does not develop his preservation argument here. He asserts he has a fundamental right to bear arms, which is true under the United States and Kansas Constitutions, but he does not explain how this issue is properly before this court and should be considered under the preservation exception. Or as the State put it: "Harris argues that he has a fundamental right to openly possess a firearm. But the fact that an argument is based on a right contemplated by the federal or Kansas Bill of Rights does not mean, as a matter of course, that it need not be raised before the district court."

12

The State reminds us that we have turned away unpreserved as-applied challenges to the constitutionality of a statute based on a defendant's right to bear arms in the past. See *State v. Foster*, 60 Kan. App. 2d 243, 254, 493 P.3d 283 (2021). And we find *Foster* a particularly apt analogy since, as we found in that case, Harris provides only a conclusory statement when invoking the preservation exceptions. He also fails to acknowledge that the facts relating to his conduct—which are disputed and undeveloped—are relevant to determining whether his right to bear arms was infringed and, if so, to what extent. Harris has the burden to justify our consideration of an issue for the first time on appeal, and we find his incidental briefing fails to satisfy this burden. 60 Kan. App. 2d at 254.

We also find it would be unfair to the State to take this issue up on appeal without allowing it an opportunity to develop the record. Not only does this inquiry involve looking at whether the statute impinges on Harris' Second Amendment rights—which necessarily involves factual determinations about his conduct—but, if it does, the State must show that restriction has an anchor in "the historical tradition" of firearms possession and regulation dating from the enactment of the Bill of Rights. If no comparable analog is shown in the nation's history, then the restriction impermissibly burdens Second Amendment rights. *Hall*, 65 Kan. App. 2d at 381 (citing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 19, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022); see *United States v. Rahimi*, 602 U.S. 680, 689, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024) (summarizing rule in *Bruen*). The State would no doubt benefit from the opportunity to develop the record in the district court on these issues. We decline to make it carry this weighty burden on appeal since to do otherwise would seem to countenance the very gamesmanship the preservation rules seek to avoid.

II. *The State did not need to present evidence that Harris' conduct occurred in a public building because K.S.A. 21-5922(a)(2) does not require prohibited conduct to occur in a public building.*

Apart from his arguments on the constitutionality of the statute, Harris also argues the evidence was insufficient to sustain his conviction since no act occurred in a public building. Unlike his constitutional challenges, Harris preserved this argument by raising it to the district court in a motion to dismiss, at trial, and when reviewing the jury instructions with the district court.

*Standard of review and relevant legal framework*

While Harris couches his argument as one based on sufficiency of the evidence, he is really arguing that the conduct prohibited by K.S.A. 21-5922(a)(2) must occur in a public building. So the first thing we must determine is what the State must prove to convict a defendant of violating K.S.A. 21-5922(a)(2). Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

When interpreting subsections (a)(2) and (b)—as with any statute—we are tasked with ascertaining the Legislature's intent in enacting the statute. *State v. Henning*, 289 Kan. 136, 139, 209 P.3d 711 (2009). Since the best evidence of this is the language chosen by the Legislature to express its intent, we start there, giving common words their ordinary meaning. If the statute's language is not self-explanatory, we then turn to outside sources to clarify the meaning of the text such as the legislative history of the statute and "canons of construction." *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021). Canons of construction are a set of default assumptions courts make about how the Legislature expresses statutory meaning. These canons—some of which have historic Latin names—assume the way the Legislature uses language, grammar,

14

punctuation, and sentence structure in drafting statutes is purposeful. Brannon, *Canons of Construction: A Brief Overview*, Congressional Research Service (May 9, 2025).

> *The district court did not err in finding the conduct prohibited by K.S.A. 21-5922(a)(2) need not occur in a public building.*

The original version of K.S.A. 21-5922 (formerly cited as K.S.A. 21-3828) was enacted in 1971. L. 1971, ch. 112, § 1. Other than changing phrasing from "willfully" to "intentionally" and then to "knowingly," the statute has not materially changed since its enactment (although it was recodified in 2010 along with the rest of the criminal code). K.S.A. 1971 Supp. 21-3828; K.S.A. 1993 Supp. 21-3828; K.S.A. 2011 Supp. 21-5922. The Act defines the crime of "[i]nterference with the conduct of public business in public buildings" as:

> "(1) Conduct at or in any public building owned, operated or controlled by the state or any of its political subdivisions so as to knowingly deny to any public official, public employee or any invitee on such premises, the lawful rights of such official, employee or invitee to enter, to use the facilities or to leave any such public building;
>
> "(2) knowingly impeding any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof;
>
> "(3) knowingly refusing or failing to leave any such public building upon being requested to do so by the chief administrative officer, or such officer's designee, charged with maintaining order in such public building, if such person is committing, threatens to commit or incites others to commit, any act which did or would if completed, disrupt, impair, interfere with or obstruct the lawful missions, processes, procedures or functions being carried on in such public building;
>
> "(4) knowingly impeding, disrupting or hindering the normal proceedings of any meeting or session conducted by any judicial or legislative body or official at any public building by any act of intrusion into the chamber or other areas designated for the use of the body or official conducting such meeting or session, or by any act designed to

15

intimidate, coerce or hinder any member of such body or any official engaged in the performance of duties at such meeting or session; or

"(5) knowingly impeding, disrupting or hindering, by any act of intrusion into the chamber or other areas designed for the use of any executive body or official, the normal proceedings of such body or official." K.S.A. 21-5922(a).

And it defines the crime of "[a]ggravated interference with the conduct of public business" as "interference with the conduct of public business in public buildings, as defined in subsection (a), when in possession of any firearm or weapon as described in K.S.A. 21-6301 or 21-6302, and amendments thereto." K.S.A. 21-5922(b). The aggravated version of the crime is a level 6 person felony and the nonaggravated version is a class A nonperson misdemeanor. K.S.A. 21-5922(c).

Harris denies the statute is ambiguous. He argues that a plain reading of this statute directs that the criminal act must occur in a public building because the term "public building" is included in the title of the statute, the title of the crime, and all the subsections of the statute other than subsection (a)(2). While the State does not contend the statute is ambiguous, it derives the opposite meaning from the statute's language. That is, since the term "public building" is not included in subsection (a)(2) but is included in other ways to commit the crime, the State contends the Legislature did not mean to require that the actions outlawed in subsection (a)(2) must occur in a public building.

Given that the title of this statute—which is "[i]nterference with the conduct of public business in public buildings; aggravated interference with the conduct of public business"—as well as the title of the crime both include the term "public buildings," and this term is included in subsections (a)(1), (a)(3), (a)(4), and (a)(5), we find that its absence in subsection (a)(2) renders the statute ambiguous, or, at the very least, awkwardly phrased such that some interpretation is required.

16

To begin, we must point out that Harris does not rest this statutory challenge on constitutional grounds. That is, he does not argue there are constitutional flaws in the way the statute is titled. Instead, he argues the title of the statute and crime serve definitive purposes. We disagree.

For one, the title of the statute is not dispositive or even helpful in determining legislative intent because it is prepared by the Revisor of Statutes and is not part of the statute itself. *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1328-29, 136 P.3d 428 (2006). It simply serves as a shorthand mechanism for describing the subject of the statute. To determine the crime's elements, we must examine the statute's provisions. See *Carter v. United States*, 530 U.S. 255, 267, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000) ("[T]he title of a statute '"[is] of use only when [it] shed[s] light on some ambiguous word or phrase"' in the statute itself."); *State v. Earley*, 192 Kan. 144, 149, 386 P.2d 221 (1963) ("It is not necessary that the title be an index, a synopsis or abstract of the entire Act in all its details. It is sufficient if the title indicates clearly, though in general terms, the scope of the Act."); *State v. Topeka Club*, 82 Kan. 756, Syl. ¶ 2, 109 P. 183 (1910) ("It is not necessary that the title contain every detail of the entire act. It will be sufficient if it fairly indicates, though in general terms, its scope and purpose.").

Even though the title of this statute as well as the title of the crime both include the term "public buildings," the Legislature defined the crime broader than its title. Here, the Legislature specified different ways an offender can interfere with the conduct of public business. And ironically, not all of those ways must occur inside of a public building. K.S.A. 21-5922(a)(2) includes a way to commit the crime which is not required to occur in a public building—when an individual "knowingly imped[es] any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof." Harris was charged with and convicted of the aggravated version of this crime. K.S.A. 21-5922(b).

17

While unusual, it is not unheard of for our Legislature to define a crime broader than its title. For example, the title of the crime in K.S.A. 8-1567 is "[d]riving under the influence" yet the crime includes attempting to operate a vehicle as well as operating it. K.S.A. 21-6404 defines the crime of gambling to include not only actually making a bet but also entering a gambling place with the intent to do so. And K.S.A. 21-6301 presents another example of a narrow title for a broadly defined crime. This statute outlaws "[c]riminal use of weapons" but contains 18 ways a person can commit the crime, including not just using weapons but also *possessing* them if the person falls within a certain category or if the weapon is possessed in certain areas. It also prohibits possessing certain items designed, used, or intended for use *in connection with a* firearm, such as a suppressor. Similarly, the crime of criminal use of an explosive includes not just using the explosive but also possessing, manufacturing, or transporting a commercial explosive whether or not a person knows or has reason to know it is a commercial explosive. K.S.A. 21-5814(a)(1).

Harris argues that because the other subsections of K.S.A. 21-5922(a) have a location requirement, we should read one into subsection (a)(2) too. But this is not supported by the language of K.S.A. 21-5922(a)(2), nor can we graft words from other sections of the statute onto subsection (a)(2) because we must "read the statutory language as it appears, without adding or deleting words." *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017). The Legislature knew how to define the location(s) where this crime can occur—it did so in the other subsection of the statute—but it did not require that the crime occur in a public building in subsection (a)(2). We therefore must presume the Legislature's inclusion of this location requirement in other subsections but not in subsection (a)(2) was meaningful and intentional. See *State v. Hambright*, 310 Kan. 408, 419, 447 P.3d 972 (2019) (applying *expressio unius est exclusio alterius*, a canon dictating that the inclusion of one thing implies the exclusion of another).

While the legislative history of this statute is not enlightening, the State points out an interesting distinction between Kansas' statute and Colorado's equivalent, Colo. Rev. Stat. § 18-9-110 entitled "[p]ublic buildings—trespass, interference—penalty," which was passed one year earlier in 1970. Colo. L. 1970, ch. 46, § 1.

When enacted, both statutes contained five subsections detailing what amounted to the crime. L. 1971, ch. 112, § 1; Colo. L. 1970, ch. 46, § 1. In both statutes, the first, third, and fourth subsections contained nearly identical language and required the prohibited conduct to occur in a public building. But Colorado's equivalent provision to what became K.S.A. 21-5922(a)(2) was limited to conduct in public buildings. Colo. L. 1970, ch. 46, § 1. Relevant to this appeal, Colorado's version of K.S.A. 21-5922(a)(2) provided: "No person shall, at or in any such public building, willfully impede any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion, or intimidation or by force and violence or threat thereof." Colo. Rev. Stat. § 18-9-110(2). Yet our Legislature has never required that the listed actions in subsection (a)(2) occur in a public building. We find the failure to mirror Colorado's statute signifies the Legislature's intent to make the Kansas statute broader.

For these reasons, we presume the Legislature chose to offer greater protections to Kansas public officials and employees in the lawful performance of their duties or activities—protection which extends outside of their activities in public buildings. This means the State did not need to present evidence that Harris' conduct occurred in a public building because an offender can violate K.S.A. 21-5922(a)(2) outside of a public building. Harris' sufficiency of the evidence challenge fails because it was not an element of Harris' crime that his conduct occur in a public building. Similarly, Harris' claim that the jury instructions were erroneous fails because it was not legally necessary to instruct the jury on an element of Harris' crime that did not exist.

Affirmed.